UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ANN R. GEORGE,

          *Plaintiff*,

v.

LONNA L. JACKSON

          *Defendants*,

CASE NO. 2:18-cv-01769-BJR

ORDER
1) GRANTING MOTION FOR PARTIAL SUMMARY JUDGMENT;
2) GRANTING MOTION FOR ENTRY OF JUDGMENT; AND
3) TO DISBURSE FUNDS FROM THE COURT REGISTRY

## I. INTRODUCTION

This matter involves an action brought by an elderly mother, Plaintiff Ann R. George ("Plaintiff"), against her daughter, Defendant Lonna L Jackson ("Defendant"), for actions performed by her daughter while serving as her mother's attorney-in-fact. Before the Court are two pending motions submitted by Plaintiff (1) a Motion for Entry of Judgment, Dkt. No. 58, and (2) a Motion for Partial Summary Judgment, Dkt. No. 69. Defendant has failed to timely respond to the Motion for Entry of Judgment but has responded, albeit untimely, to the Motion for Partial Summary Judgment. Having reviewed the motions, opposition thereto, the record of the case, and the relevant legal authorities, the Court will grant both of Plaintiff's motions. The reasoning for

1

the Court's decision follows.

## II. BACKGROUND

### A. Factual Background

Plaintiff is 86 years old and currently resides in California. Dkt. No. 11 at 4, 7; Dkt. No. 69 at 2, 7. Her husband, William George, passed away in 2014. Dkt. No. 11 at 4.[1] The couple had two children, Defendant Lonna Jackson and Bruce George. *Id.* Between 1973 and 2018, Defendant Lonna Jackson was married to George Alvarez and went by the name Lonna Alvarez. *Id.* Lonna divorced George and married Douglas Jackson in 2018. *Id.* Bruce married Debra George but passed away in January of 2019. *Id.* at 4, 6.

After William's passing in 2014, Defendant was appointed Plaintiff's attorney-in-fact. *Id.* at 4; *See also* Dkt. No. 69 at 4; Dkt. No. 70-1, Ex. E (General Durable Power of Attorney executed October 5, 2017) ("Power of Attorney"); Dkt. No. 80 at 2. At the time of William's passing, the couple owned three pieces of property: (1) an apartment located in Seal Beach, California, (2) a parcel of land in the Wilderness Village Community in Skagit County, WA; and (3) a home located on Lyman Ferry Road in Sedro Wooley, WA ("Berry Lane Residence"). Dkt. No. 69 at 2. Plaintiff resided at the Berry Lane Residence until 2017. Dkt. No. 11 at 5.

In late 2017, Defendant purchased a home in Anacortes, Washington ("Anacortes

---

[1] In a footnote of her response to Plaintiff's Motion for Summary Judgment, Defendant half-heartedly argues this Court does not have jurisdiction over this matter as William George's will contains a Mediation/Arbitration of Disputes clause. Dkt. No. 80 at 2 n.1; Dkt. No. 70-1, Ex. I (Will of William E. George at Article VIII, Subsection J). The clause provides that disputes arising from "the interpretation or effect of this instrument or the administration of this estate" shall first be submitted to non-binding mediation. Dkt. No. 70-1, Ex. I. The present matter is not a dispute over the effect of William George's will, but rather the duties and actions of Defendant while serving as Plaintiff's attorney-in-fact. Thus, the will's mediation clause does not affect this Court's jurisdiction over this dispute.

Residence"). *Id.* at 5; Dkt. No. 69 at 4. Defendant then relocated Plaintiff to the Anacortes Residence, where they lived together. Defendant sold the Berry Lane Residence in June 2018 pursuant to Defendant's Power of Attorney. Dkt. No. 11 at 6; Dkt. No. 69 at 6.

While living at the Anacortes Residence in June 2018, Plaintiff suffered a fall. Dkt. No. 11 at 6; Dkt. No. 69 at 6–7. Plaintiff reports she suffered a "large wound" on her head as a result and "lay undiscovered for several hours" until found by Defendant. Dkt. No. 11 at 6. Plaintiff alleges that Defendant "failed to obtain medical treatment" to address Plaintiff's wound. *Id.* During the Fall of 2018, apparently distressed by Plaintiff's condition, Bruce and Debra relocated Plaintiff to California to live with them. *Id.* at 7.

**B. Procedural History**

The instant case began as an interpleader action in which Wells Fargo Bank, N.A. ("Wells Fargo") sought to determine ownership of funds transferred from a joint account in the names of Plaintiff and Defendant to an account solely in Defendant's name. Dkt. No. 1. According to Wells Fargo, these funds appeared to be the Berry Lane Residence sale proceeds as the funds originated from a check issued by a title company for $304,269.37 and labeled "Closing Proceeds." *Id.* at ¶¶ 13–15. In addition to the transfer of the sale proceeds, Wells Fargo also noted other large amounts withdrawn from joint accounts held by Plaintiff and Defendant and deposited into accounts held solely by Defendant. *See id.* at ¶ 16. Based on this activity and a complaint by Plaintiff, Wells Fargo restrained the $262,023.14 in Defendant's solely held account. *Id.* at ¶ 18. On March 18, 2019, the Court ordered Wells Fargo to deposit the restrained funds (totaling $256,797.74 after deductions for reasonable costs and fees) into the Court Registry and dismissed Wells Fargo from

3

the action. Dkt. No. 13.[2]

Plaintiff answered Wells Fargo complaint on March 13, 2019 and asserted three crossclaims against Defendant. Dkt. No. 11. These crossclaims included (1) statutory claims under the Abuse of Vulnerable Adults Act, RCW § 74.34.005 *et seq.*, ("AVAA"); (2) Breach of Fiduciary Duties; and (3) Negligence. *Id.* at 7–9. Specifically, Plaintiff based her claims under the AVAA on allegations that Defendant "financially exploit[ed] [Plaintiff] by misappropriating and comingling [Plaintiff]'s financial assets," *id.* at 7, and neglected to obtain medical care and "provide safe living conditions," *id.* at 8. As for her Breach of Fiduciary Duties claim, Plaintiff alleged *inter alia* Defendant "misappropriate[ed] and comingl[ed]" assets; coerced Plaintiff into relocating to the Anacortes Residence; and failed to obtain medical treatment after Plaintiff's fall in the Anacortes Residence. *Id.* at 8.

Plaintiff's Answer also included a demand for an accounting under RCW § 11.125.140, which provides that an attorney-in-fact must provide "receipts, disbursements, or transactions conducted on behalf of the principal," *i.e.*, an accounting of financial transactions taken on behalf of a principal, within thirty days of being requested by the principal or court order. RCW § 11.125.140(9); Dkt. No. 11 at 9. Plaintiff made a formal Motion for Accounting on April 18, 2019, Dkt. No. 20, and the Court granted the motion on May 6, 2019, Dkt. No. 27.

In its Order Granting Plaintiff's Motion for Accounting, the Court gave explicit instructions as to the requirements for the accounting, including that it contain "all receipts, disbursements, and

---

[2] The Court Registry informs the Court that Wells Fargo deposited a total of $256,801.98 into the Registry.

4

transactions, made with Ann R. George's financial assets, or on Ann R. George's behalf, during the term of Defendant Jackson's authority as attorney-in-fact" and that it identify "the starting balance of any bank, stock, or investment accounts (the 'Accounts') in [Plaintiff] George's name, and identify any deposits and withdrawals therefrom, as well as the beneficiary of those transactions, and the ending balance of the Accounts." Dkt. No. 27 at 2. The Court also ordered that the accounting be prepared and organized according to the Generally Accepted Accounting Principles and that it be due no later than June 5, 2019. *Id.*

No accounting has ever been produced and Defendant remains in noncompliance to this day. Despite granting several extensions, *see* Dkt. Nos. 32, 38, 45, 47, 49, the Court was forced to impose contempt and sanctions on September 18, 2019, Dkt. No. 56. Pursuant to its Order Granting Motion for Contempt and Sanctions, the Court penalized Defendant $100 per day to be paid to the Court for each day she failed to produce an accounting; granted Plaintiff reasonable attorney's fees and costs in the amount of $5,868.00; and ordered Defendant to deposit $153,540.00, or whatever sum remained, from a personal account at Skagit Bank into the Court Registry as disputed funds. Dkt. No. 56 at 5–7.[3] On October 16, 2019, Defendant deposited $20,200.00 in the Court Registry as the funds remaining from the Skagit Bank account. Dkt. Nos. 57, 59.

On October 17, 2019, Plaintiff brought her Motion for Entry of Judgment. Dkt. No. 58. In the motion, she seeks entry of a formal judgment as to the reasonable attorney's fees and costs

---

[3] At the request of the parties, the Court suspended its daily sanction for failure to provide an accounting on November 27, 2019 until the Court ruled on Plaintiff's yet-to-be filed motion for summary judgment. Dkt. No. 68.

5

awarded by the Court as Defendant had not provided the $5,868.00 to date. Defendant has provided no response to the motion. *See* Dkt. No. 63. On December 5, 2019, Plaintiff filed her Motion for Partial Summary Judgment. Dkt. No. 69. In it, she seeks summary judgment for her claims for Breach of Fiduciary Duty and violation of the AVAA and an award of damages of $447,785.64.

### III. LEGAL STANDARD

The Court must grant summary judgment for Plaintiff if she is able to show there is "no genuine dispute as to any material fact" and is thus "entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "Material facts are those that may affect the outcome of the case." *Inteum Co., LLC v. Nat'l Univ. of Singapore*, 371 F. Supp. 3d 864, 872 (W.D. Wash. 2019) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986)). A dispute is "'genuine' only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party." *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 992 (9th Cir. 2001); *see also Anderson*, 477 U.S. at 248 ("a material fact is 'genuine,' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

The movant, here Plaintiff, bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant can meet her initial burden, "the nonmovant must respond showing that there is a genuine issue for trial." *Landis v. Wash. State Major League Baseball Stadium Pub. Facilities Dist.*, 403 F. Supp. 3d 907, 914 (W.D. Wash. 2019) (citing *Anderson*, 477 U.S. at 250). "If the nonmoving party fails to establish the existence of a genuine issue of material fact, 'the moving party is entitled to judgment as a matter of law.'" *Perfect Co. v. Adaptics Ltd.*, 374 F. Supp. 3d 1039, 1041 (W.D.

Wash. 2019) (quoting *Celotex*, 477 U.S. at 323–24).

In ruling on a motion for summary judgment, the Court "views the evidence and draws inferences in the light most favorable to the non-moving party." *Williams v. PRK Funding Servs., Inc.*, 596 B.R. 375, 379 (W.D. Wash. 2019) (citing *Anderson*, 477 U.S. at 255). The nonmoving party, however, "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "Uncorroborated allegations and self-serving testimony will not create a genuine issue of material fact." *Williams*, 596 B.R. at 379–80 (W.D. Wash. 2019) (citing *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002)).

## IV. DISCUSSION

### A. Breach of Fiduciary Duties

To establish a Breach of Fiduciary Duty, Plaintiff must show "(1) the existence of a fiduciary duty, (2) a breach of that fiduciary duty, (3) resulting injury, and (4) that the breach of duty proximately caused the injury." *Arden v. Forsberg & Umlauf, P.S.*, 373 P.3d 320, 327 (Wash. Ct. App. 2016) (citing *Micro Enhancement Int'l, Inc. v. Coopers & Lybrand, LLP*, 40 P.3d 1206, 1217 (Wash. Ct. App. 2002)). Here, the only debate is over the second element, that is, whether the duty has been breached. The parties agree Defendant owed Plaintiff a fiduciary duty as her attorney-in-fact and under the signed Power of Attorney. *See* Dkt. No. 69 at 11–12; Dkt. 80 at 3; *see also In re Estate of Palmer*, 187 P.3d 758, 765–66 (Wash. Ct. App. 2008) ("[a]n attorney-in-fact is an agent . . . [and] [i]n that role, the agent becomes a fiduciary who is bound to act with the utmost good faith and loyalty") (internal citations removed). Also, there is little debate over whether if a breach of duty is found, the appropriation of the amounts at issue constituted injury

or that the injury would be proximately caused by the alleged breach.

"Agents have a duty to exercise care in dealing with their principals and are liable for any damage caused by a breach of that duty." *Monty v. Peterson*, 540 P.2d 1377, 1379 (Wash. 1975). Their duty is to "avoid placing [themselves] in a situation where [they] may be tempted by [their] own private interests to disregard that of [their] principal and it is this corrupting tendency the law condemns." *Williams v. Queen Fisheries, Inc.*, 469 P.2d 583, 586 (Wash. Ct. App. 1970). It is indisputable that a fiduciary who misappropriates her principal's property breaches her fiduciary duties. *Stephan v. Beaver*, 86 Wash. App. 1099, 1997 WL 404056, at *2 (Wash. Ct. App. 1997) (citing *Interlake Porsche & Audi, Inc. v. Bucholz*, 728 P.2d 597, 607 (Wash. Ct. App. 1986)).

The subjective intent of the fiduciary is irrelevant as a breach may occur "although no corruption, dishonesty or bad faith is involved." *Williams*, 469 P.2d at 586. Importantly, fiduciaries bear the burden of proving the propriety of their actions. *See Wilkins v. Lasater* 733 P.2d 221, 228 (Wash. Ct. App. 1987) (citing *Hetrick v. Smith*, 122 P. 363, 364 (Wash. 1912)). Moreover, "[i]nherent in the fiduciary relationship" is the duty to "account for the assets managed by the attorney-in-fact." *In re Estate of Palmer*, 187 P.3d at 766. This duty is also formally provided in the Power of Attorney. *See* Dkt. No. 70-1, Ex. E, at ¶ 8 ("The Attorney in Fact shall be required to account to any subsequently appointed personal representative or guardian").

Plaintiff claims Defendant breached her fiduciary duties based on three actions: selling the Berry Lane Residence and converting the proceeds, Dkt. No. 69 at 12–14; converting an additional $153,512.03 of her mother's assets (the "August Funds"), *id.* at 15–16; and failing to produce an accounting, *id.* at 16–17. Based on these alleged breaches, Plaintiff seeks damages in the following amounts: the $256,797.94 in the Court Registry as the remainder of the Berry Lane Residence sale

proceeds; the $20,200 deposited in the Court Registry representing the remainder of the August Funds; and $170,783.66 in funds allegedly misappropriated but currently unaccounted for. *Id.* at 2, 14, 15, 19.[4, 5]

### 1. *Plaintiff's Motion for Partial Summary Judgment is not Premature*

Defendant responds that summary judgment on this claim is premature as there is "insufficient evidence . . . on the record to support summary judgment." Dkt. No. 80 at 2. Her protestations, however, are unavailing. Discovery in this matter closed on January 2, 2020. Dkt. No. 24. Defendant has provided no request to extend discovery nor shown good cause to do so. Defendant has had more than adequate time to conduct depositions and procure evidence. She cannot here complain that she has not had the opportunity to do so. In fact, Defendant does not contest Plaintiff's assertion that Defendant has done no discovery. *See* Dkt. No. 86 at 10–11

---

[4] As best the Court can determine from Plaintiff's motion and attached exhibits, these numbers are derived as follows: the Berry Lane Residence was sold for proceeds totaling $304,269.37, as represented by the check from Chicago Title Company. *See* Dkt. No. 69; Dkt. No. 70-1, Ex. H. Defendant then transferred this amount from a joint account to an account solely in her name, but returned $10,000 to the joint account, making the misappropriated total $294,269.37 ($304,269.37-$10,000). Dkt. No. 69 at 6; *id.* at 13 n.11. From this, Wells Fargo identified $256,797.74 as contested funds. *See* Dkt. No. 13. This leaves $37,471.63 unaccounted for. Wells Fargo actually deposited $256,801.98, the difference of $4.24 representing the accrued interest while Wells Fargo retained the funds. Next, Plaintiff alleges Defendant misappropriated $153,512.03 of Plaintiff's other assets, referred to as the August Funds. Dkt. No. 69 at 7, 15; Dkt. No. 71-1, Ex. Seven. Of this, Defendant deposited $20,200.00 in the Court Registry per the Court's order. *See* Dkt. Nos. 56, 57, 59. Thus, $133,312.03 remains unaccounted for from the August Funds ($153,512.03-$20,200.00). Adding together the unaccounted for funds ($37,471.63+$133,312.03), $170,783.66 is missing. Thus, total damages sought are $277,001.98 (plus interest) from the Court's Registry and $170,783.66, for a total of $447,785.64.

[5] Defendant objects to several of the tables and image snapshots provided in Plaintiff's motion, claiming they violate the "Best Evidence Rule." In federal court, the Best Evidence Rule is provided by Federal Rule of Evidence 1002, which requires "[a]n original writing, recording, or photograph . . . in order to prove its content." FED. R. EVID. 1002; *see also Buse v. First Am. Title Ins. Co.*, No. 08-civ-0510, 2009 WL 1543994, at *4 (W.D. Wash. May 29, 2009) (the Best Evidence Rule "requires that a party seeking to prove the content of a document do so by submitting the document itself unless impossible or impracticable"). While Defendant fails to specify which exhibits she objects to, Plaintiff has referenced original documents in all of the inserts in her motion and provided copies of the original documents in her exhibits. *See* Dkt. Nos. 70-1, 71-1.

9

(Plaintiff replying that Defendant "has not propounded any written discovery or deposed any witnesses").

    *2. Defendant had no Right to the Berry Lane Residence Sale Proceeds*

Defendant claims that she was gifted the Berry Lane Residence by her mother, *see id.* at 3 (referring to Dkt. No. 70-1, Ex. B ("Gift Document")), and that it was "entirely reasonable" for her to believe she owned the property and could sell it, *id.* at 4; *see also id.* at 4–6. Defendant's sale of the Berry Lane Residence and appropriation of the sale proceeds, however, constitutes a breach of her fiduciary duties.

First, Plaintiff has provided documentation showing the devolution of the property's ownership from a communal holding while William George was alive to Plaintiff's exclusive property upon his death. To the extent Defendant relies on the Will of William George to support her claim to the Berry Lane Residence, this contention is unavailing. Dkt. No. 70-1, Ex. I (Will of William E. George). The Will was signed on the same day as the couple formalized a Community Property Agreement, which provides that community property and property held in joint tenancy shall "vest in the surviving spouse as of the moment of death of the first spouse to die." Dkt. No. 70-1, Ex. A at 1. The Will devises the property to Defendant, but only "[u]pon my wife's death, or upon my death if my wife fails to survive me." Dkt. No. 70-1, Ex. I, at Art. V. Defendant's interest, then, did not vest since William died first and his share of the Berry Lane Residence went to Plaintiff by operation of the Community Property Agreement. And Plaintiff is still alive.

Defendant also claims that Plaintiff gifted her the property in 2014. In support of this claim, Defendant relies on the "Gift Document." This document is a two-page hand written and

notarized letter signed by Plaintiff which purportedly gifts the Berry Lane Residence, along with Plaintiff's "personal property, jewelry, furnishings, and yard maintenance equipment," to Defendant. Dkt. No. 70-1, Ex. B. Plaintiff challenges the effectiveness of this transfer, Dkt. No. 69 at 3, 13–14; Dkt. No. 86 at 4–6, and correctly does so.

The ineffectiveness of this transfer is borne out by the course of events subsequent to the Gift Document. After Defendant attempted to transfer Plaintiff's property pursuant to the Gift Document, Plaintiff hired an attorney to clarify ownership "consistent with Ms. George's true wishes." Dkt. No. 69 at 3. This attorney drafted, and Plaintiff signed, documentation removing William George as a listed owner and placing ownership solely in Plaintiff's hands. Dkt. No. 70-1, Ex. C. Plaintiff also executed a Revocable Transfer Deed, which would transfer ownership to Defendant (and her former husband George Alverez) upon Plaintiff's death, *Id.* at Ex. D. Since Plaintiff is still alive, at the time of the sale of the Berry Lane Residence Plaintiff remained the sole owner of the property. *See* Dkt. No. 70-1, Ex. G. Indeed, the Statutory Warranty Deed executed at the sale of the property reflects that Plaintiff was the owner of the property. Simply put, Defendant was not entitled to the proceeds from the sale.

Defendant admits she took the sale proceeds of the Berry Lane Residence. Dkt. No. 81 at ¶ 11. She claims she believed that it was "for [her] inheritance" based on the Gift Document. *Id.* The subjective intent of a fiduciary is irrelevant in determining the propriety of her actions. *See Williams*, 469 P.2d at 586. Defendant has presented no countervailing evidence to suggest that the appropriated funds were used for the benefit of Plaintiff, as is both her duty and burden. The Court finds that Defendant breached her fiduciary duties by misappropriating the Berry Lane Residence sale proceeds and awards Plaintiff the full amount of the misappropriated funds, $294,269.37, in

damages.

### 3. Defendant Improperly Transferred the August Funds

On August 13, 2018, Defendant transferred the sum of $153,512.03—$98,161.78 from one joint account in her and Plaintiff's names and $55,350.25 from another joint account—to a personal account solely in Defendant's name located at Skagit Bank by means of a cashier's check. *See* Dkt. No. 69 at 7; Dkt. No. 71-1 at Exs. 7, 8. Defendant admits she withdrew the August Funds, including the precise amount of $153,512.03. Dkt. No. 81 at ¶ 2. She says she did so to protect her mother's assets from "what [she] believed to be a concerted effort on [her sister-in-law's] part to take advantage of [her] now-deceased brother Bruce George's potential inheritance." *Id.* At the same time, Defendant admits she "used funds from the $153,512.03 [she] withdrew in August in order to sustain [her and her husband's] living expenses due to the burden of not having access to my disability benefits or my personal account for an extensive period of time." *Id.* at ¶ 7. Thus, there can be little doubt that Defendant withdrew assets belonging to Plaintiff and, whatever the reason, used them for her own personal benefit. Further, Defendant has produced no accounting, or evidence of any sort, that she used any portion of these funds to fulfill her fiduciary or caregiver obligations. As such, there exists no dispute of fact and summary judgment is warranted. Defendant has breached her fiduciary duty by misappropriating $153,512.03 of Plaintiff's funds.

### 4. Defendant has Failed to Provide an Accounting

Defendant has a duty to provide an accounting arising from statute, RCW § 11.125.140; from the language of the Power of Attorney she executed with her mother, Dkt. No. 70-1, Ex. E; and by order of this Court, Dkt. No. 27.

It is indisputable that Defendant has failed to produce an accounting. Instead, she confuses

the duty to provide discovery, and bank records requested by Plaintiff, with an actual accounting. The failure to provide such an accounting is underscored by Defendant's own protestations. In defending her care of her mother, Defendant claims she conducted numerous financial transactions and purchases for her mother's benefit using her mother's money. *See, e.g.*, Dkt. No. 81 at ¶ 9 (claiming to have purchased household items such as a dining room table, washer, dryer, refrigerator, and large reclining couch, a small DVD cabinet, a TV, a coffee table, two end tables, and two lamps all for her mother's benefit). Yet Defendant can provide no account for how much these large transactions cost, when they occurred, or from which account they originated. If these were transactions using her mother's assets for the benefit of her mother, Defendant as attorney-in-fact is required to provide evidence of such transactions. She has not.

As such, Defendant has breached her fiduciary duties and continues to do so by failing to provide an account of any transaction she took on behalf of her mother while serving as her mother's attorney-in-fact.

### B. Abuse of Vulnerable Adults Act

Based on Plaintiff's accusations that Defendant misappropriated Plaintiff's assets while serving as her attorney-in-fact, Plaintiff seeks summary judgment on her claim for a violation of the AVAA. Dkt. No. 69 at 18–19. Additionally, Plaintiff seeks reasonable attorney's fees and costs pursuant to RCW § 74.34.130(5) available to prevailing parties in an AVAA claim. *Id.* Plaintiff promises to provide a summary of her fees and costs in a supplemental brief. *Id.* at 19.

Defendant counters that she worked "tirelessly to provide a comfortable environment for Plaintiff." Dkt. No. 80 at 10. She further claims the accusations that she financial exploited her mother are "unfounded as Defendant routinely provided goods and services to Plaintiff with

13

Plaintiff's funds." *Id.* at 11. Plaintiff replies, however, that she is not seeking summary judgment on her claim for negligence or neglect, but, instead, merely for financial exploitation under the AVAA. Dkt. No. 86 at 6–7.

The AVAA was enacted to protect vulnerable adults who may be subject to "abuse, neglect, financial exploitation, or abandonment by a family member, care provider, or other person who has a relationship with the vulnerable adult." RCW § 74.34.005(1). To do so, Washington State's legislature created "a new cause of action to protect disabled adults from abandonment, abuse, financial exploitation, or neglect." *Schumacher v. Williams*, 28 P.3d 792, 795 (Wash. Ct. App. 2001); *see also Goldsmith v. Dep't of Soc. & Health Servs.* 280 P.3d 1173, 1177–78 (Wash. Ct. App. 2012). Qualifying adults[6] may, therefore, bring "[a]n action for damages under this chapter." RCW § 74.34.210. "Financial exploitation," in turn, is defined as "the illegal or improper use, control over, or withholding of the property, income, resources, or trust funds of the vulnerable adult" including a "breach of a fiduciary duty" or "misuse of a power of attorney" resulting in "unauthorized appropriation, sale, or transfer of the property, income, resources, or trust funds of the vulnerable adult for the benefit of a person or entity other than the vulnerable adult." *Id.* at § 74.34.020(7).

Based on the Court's finding that Defendant misappropriated the Berry Lane Residence sale proceeds and the August Funds as well as breached her fiduciary duties in failing to produce an accounting, it is indisputable that Defendant has violated the AVAA. The Court will, therefore,

---

[6] Both parties stipulate that Plaintiff qualifies as a "vulnerable adult" under the AVAA. *See* Dkt. No. 19 at 5; Dkt. No. 69 at 18; Dkt. No. 60 at 5; *see also* RCW § 74.34.020(22) (defining "vulnerable adult").

14

grant summary judgment as to this claim. Further, pursuant to the AVAA's grant of attorney's fees and costs, RCW § 74.34.130(5), the Court expects Plaintiff to make an appropriate motion for fees and costs at the conclusion of this matter.

### C. Status of Defendant's Contempt

As mentioned previously, this Court ordered sanctions based on Defendant's failure to provide an accounting. Dkt. No. 56. The Court also ordered the tolling of those sanctions for the pendency of Plaintiff's Motion for Partial Summary Judgment. Dkt. No. 68. As the Court will herein grant partial summary judgment, it will also reinstate Defendant's daily penalty starting from the date of this order. As noted previously, Defendant's obligation to provide an accounting is independent of her obligation to produce bank records as part of discovery. A fiduciary is required to keep an account of the transactions they perform for their principal's benefit. Any delay by Wells Fargo does not excuse the fact that Defendant should have had this information available when originally requested.

## V. MOTION FOR ENTRY OF JUDGMENT

In her Motion for Entry of Judgment, Plaintiff seeks a judgment based on the Court's order of $5,868.00 in attorney's fees and costs. Dkt. No. 58. Defendant does not contest that she has not paid the ordered sum. Dkt. No. 69 at 19. As such, entry of judgment is warranted.

## VI. CONCLUSION

For the foregoing reasons, the Court hereby GRANTS Plaintiff's Motion for Entry of Judgment, Dkt. No. 58, GRANTS Plaintiff's Motion for Partial Summary Judgment, Dkt. No. 69, and further ORDERS as follows:

1. Plaintiff is awarded damages in the amount of $447,785.64.

2. In accordance with LCR 67(b), the clerk is authorized and directed to draw a check on the funds deposited in the registry of this Court in the principle amount of $277,001.98 plus all accrued interest, minus any statutory user's fees, payable to Ann R. George and mail or deliver the check to Ann R. George.

3. The daily sanctions ordered by this Court in the amount of $100 per day for failure to provide an accounting, Dkt. No. 56, and ordered stayed on November 27, 2019, Dkt. No. 68, are hereby ORDERED reinstated. Additional penalties in the amount of $100 per day payable to the Court for each day Defendant fails to provide an accounting in accordance with the Court's previous order, Dkt. No. 27, shall again accrue starting as of the date of this order.

DATED this 21st day of February, 2020.

BARBARA J. ROTHSTEIN
UNITED STATES DISTRICT JUDGE